IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

NOVEMBER TERM, 1881.

---

## WILLIAM P. HUGHES v. JAMES McDONOUGH.

1. A person is answerable at law for all the consequences of his wrongful acts, which were reasonably to be foreseen, and which were the results, in the usual order of things, of such wrongful act.
2. A declaration shows a legal cause of action which alleges that the plaintiff's trade was that of a horseshoer; that he shod a horse for one V. R.; that the defendant, with the intent of making V. R. believe that the work of the plaintiff was badly done, privily loosened such shoe, &c.; that such artifice succeeded, and plaintiff lost custom of V. R.

---

On writ of error.

The substance of the declaration was, that the plaintiff was a blacksmith and horseshoer by trade, of good character, &c.; that he had obtained the patronage of one Peter Van Riper, and that on a certain occasion he shod a certain mare of the said Van Riper in a good and workmanlike manner; that the defendant, maliciously intending to injure the plaintiff in his said trade, &c., " did wilfully and maliciously mu-

tilate, impair and destroy the work done and performed by the said plaintiff upon the mare of the said Van Riper, without the knowledge of the said Van Riper, by loosing a shoe which was recently put on by the said plaintiff, so that if the mare was driven, the shoe would come off easily, and thus make it appear that the said plaintiff was an unskilful and careless horseshoer and blacksmith, and that the said mare was not shod in a good and workmanlike manner, and thus deprive the said plaintiff of the patronage and custom of the said Van Riper."

The second count charges the defendant with driving a nail in the foot of the horse of Van Riper, after it had been shod by the plaintiff, with the same design as specified in the first count.

The special damage laid was the loss of Van Riper as a customer.

Argued at June Term, 1881, before BEASLEY, CHIEF JUSTICE, and Justices SCUDDER, KNAPP and REED.

For the plaintiff in error, *W. B. Guild, Jr.*

For the defendant, *S. Kalisch*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.   The single exception taken to this record is, that the wrongful act alleged to have been done by the defendant does not appear to have been so closely connected with the damages resulting to the plaintiff as to constitute an actionable tort.   The contention was, that the wrong was done to Van Riper ; that it was his horse whose shoe was loosened, and whose foot was pricked, and that the immediate injury and damage were to him, and that, consequently, the damages of the plaintiff were too remote to be made the basis of a legal claim.

But this contention involves a misapplication of the legal principle, and cannot be sustained.   The illegal act of the

defendant had a close causal connection with the hurt done to the plaintiff, and such hurt was the natural and almost direct product of such cause. Such harmful result was sure to follow, in the usual course of things, from the specified malfeasance. The defendant is conclusively chargeable with the knowledge of this injurious effect of his conduct, for such effect was almost certain to follow from such conduct, without the occurrence of any extraordinary event, or the help of any extraneous cause. The act had a twofold injurious aspect: it was calculated to injure both Van Riper and the plaintiff; and as each was directly damnified, I can perceive no reason why each could not repair his losses by an action.

The facts here involved do not, with respect to their legal significance, resemble the juncture that gave rise to the doctrine established in the case of *Vicars* v. *Wilcocks*, 8 *East* 1. In that instance the action was for a slander that required the existence of special damage as one of its necessary constituents, and it was decided that such constituent was not shown by proof of the fact that as a result of the defamation the plaintiff had been discharged from his service by his employer before the end of the term for which he had contracted. The ground of this decision was that this discharge of the plaintiff from his employment was illegal, and was the act of a third party, for which the defendant was not responsible, and that, as the wrong of the slander became detrimental only by reason of an independent wrongful act of another, the injury was to be imputed to the last wrong, and not to that which was farther distant one remove. In his elucidation of the law in this case, Lord Ellenborough says, alluding to the discharge of the plaintiff from his employment, that it "was a mere wrongful act of the master, for which the defendant was no more answerable, than if, in consequence of the words, other persons had afterwards assembled and seized the plaintiff and thrown him into a horse-pond by way of punishment for his supposed transgression." The class of cases to which this authority belongs, rests upon the principle that a man is responsible only for the natural consequences of his

own misdeeds, and that he is not answerable for detriments that ensue from the misdeeds of others. But this doctrine, it is to be remembered, does not exclude responsibility when the damage results to the party injured through the intervention of the legal and innocent acts of third parties, for, in such instances, damage is regarded as occasioned by the wrongful cause, and not at all by those which are not wrongful. Where the effect was reasonably to have been foreseen, and where, in the usual course of events, it was likely to follow from the cause, the person putting such cause in motion will be responsible, even though there may have been many concurring events or agencies between such cause and its consequences. This principle is stated, and is illustrated by a reference to a multitude of decisions in *Cooley on Torts* 70, *et seq.*

The case of *McDonald* v. *Snelling,* 14 *Allen* 290, is pertinent to this point, and also to the circumstance that a wrongful act which is primarily detrimental to one person, may, under some conditions, be actionable by a third person, to whom, more remotely, damage has been occasioned. In the case cited, it appeared that the defendant's servant negligently drove his carriage against the carriage of a second person, and by that means caused the horse attached to such second carriage to run away. The plaintiff was injured by this latter runaway horse in his flight, and it was decided that the defendant was liable for the damage thus done to the plaintiff. It will be noted that here the primary injury by the defendant's negligence, was done to the owner of the carriage first struck, whose horse was terrified and ran away; and that the injury to the plaintiff was removed one degree further from such wrongful cause, being occasioned by the horse thus put to flight; nevertheless, such latter damage was held to be, in a legal point of view, proximate, as it was, in the usual course of things, the probable and natural result from the negligence of the defendant. The rule of decision is stated in these terms: "Where a right or duty is created wholly by contract, it can only be enforced between the contracting

parties; but where the defendant has violated a duty imposed upon him by the common law, it seems just and reasonable that he should he held liable to every person injured, whose injury is the natural and probable consequence of the misconduct. In our opinion, this is the well-established and ancient doctrine of the common law, and such a liability extends to consequential injuries, by whomsoever sustained, so long as they are of a character likely to follow, and which might reasonably have been anticipated as the natural and probable result, under ordinary circumstances, of the wrongful act."

This same rule of law is sanctioned and enforced in *Rigby* v. *Hewitt*, 5 *Exch.* 242, Chief Baron Pollock saying: " I .am, however, disposed not quite to acquiesce to the full extent in the proposition that a person is responsible for all the possible consequences of his negligence. I wish to guard against laying down the proposition so universally; but of this I am quite clear, that every person who does a wrong is at least responsible for all the mischievous consequences that may reasonably be expected to result, under ordinary circumstances, from such misconduct." Judge Parsons expresses the rule almost in these same terms. 2 *Parsons on Cont.* 456.

In this same line there are many other illustrative cases, among which should be specially noted the following: *Dixon* v. *Fawcus*, 30 *L. J.*, *Q. B.* 137; *Tarleton* v. *McGawley*, *Peake* 270; *Bell* v. *Midland Railway Co.*, 10 *C. B.* (*N. S.*) 307; *Keeble* v. *Hickeringill*, 11 *East* 574, *n.*

The principles thus propounded must have a controlling effect in the decision of the question now before this court, as they decisively show that the damage of which the plaintiff complained was not, in a legal sense, remote from the wrongful act. What, in point of substance, was done by the defendant, was this: he defamed, by the medium of a fraudulent device, the plaintiff in his trade, and by means of which defamation, the latter sustained special detriment. If this defamation had been accomplished by words spoken or written, or by signs or pictures, it is plain the wrong could have been

remedied, in the usual form, by an action on the case for the slander; and, plainly, no reason exists why the law should not afford a similar redress when the same injury has been inflicted by disreputable craft. It is admitted upon the record that the plaintiff has sustained a loss by the fraudulent misconduct of the defendant; that such loss was not only likely, in the natural order of events, to proceed from such misconduct, but that it was the design of the defendant to produce such result by his act. Under such circumstances it would be strange indeed if the party thus wronged could not obtain indemnification by an appeal to the judicial tribunals.